### BROCK *v.* BROCK.

No. 11645. FEBRUARY 12, 1937.

*Poole & Fraser,* for plaintiff.

*McElreath, Scott, Duckworth & DuVall,* for defendant.

RUSSELL, Chief Justice. Mrs. Lula Bert Brock filed suit against William C. Brock for a divorce, alimony, custody of their minor child, and fees, alleging that the defendant had been guilty of cruel treatment of her, cursing, striking, and abusing her in the presence of this child and of the plaintiff's child (a little girl) by a former marriage, all of which caused the plaintiff to lose her love and respect for defendant, greatly impaired her health, made life with the defendant unbearable, and caused their separation; that the plaintiff had the custody and care of these children; that the defendant had refused to carry out an agreement to adopt the child of the previous marriage; that he was an able-bodied man earning $300 a month with a telephone company; that he owned certain described improved realty in Atlanta; that he owned also a large number of shares of stock in the American Telephone and Telegraph Company, and other properties and assets unknown to the plaintiff; that at the time of her marriage to defendant she had a separate estate of $5,000 in cash; and that he had persuaded her against her will to lend this money to him, and had failed and refused to repay her. The defendant denied that he was guilty

of being cruel to plaintiff, that he had ever agreed to adopt her little girl, that he made as much as $300 a month, that he was an able-bodied man, or that he had borrowed any money from the plaintiff. He alleged that he was under no obligation to support her little girl, that he made only $275 a month, that he was in bad health and under the constant care of a physician, that his realty is subject to a $2600 loan, and that interest and taxes are against it. By way of cross-action he alleged that for more than eighteen months before the separation the plaintiff was habitually intoxicated and was cruel and abusive towards him, that she had threatened his life and often beat and cursed him, that at the time he separated from her she cut his neck and throat to such an extent that there is now a long ugly scar on the left side of his throat, that he separated from the plaintiff because he was afraid she would kill him if he continued to live with her, that her cruel treatment has seriously impaired his health, that he has not condoned her habitual intoxication or cruel treatment, that he now lives with his sister and her husband, that the plaintiff is annoying and molesting him and his sister and her husband and other of his relations, by calling them over the telephone at all hours of the day and night, and cursing them and abusing the defendant or whomever answers the telephone, and that she has telephoned to him at his place of work and has threatened to harass and annoy and molest him and his relatives in every way possible. The defendant prayed that the plaintiff's petition be denied, that he have a total divorce from her, that the custody of their minor boy be awarded him, that the plaintiff be restrained from telephoning to him, his sister or her husband, and from annoying or molesting them or any of his relatives in any manner, and that he have such other relief as may be proper.

The trial now under review was the second and final hearing. The plaintiff introduced evidence in support of the allegations of her petition, and in denial of defendant's cross-action. There was evidence as to plaintiff's separate estate, including money and thirteen shares of telephone stock, which the defendant had used with some money belonging to plaintiff's little girl, that he had not repaid the money, that the purchase-price of the realty owned by him was $6750, and that the plaintiff is not physically able to work, and has no income except what the defendant has been pay-

862

ing to her. She testified that she had done nothing, since the separation, to prevent him coming back to her, that she asked him to come back, and that he used the money obtained from selling her telephone stock in the purchase-price of the house and lot he owned. The defendant introduced evidence tending to support his answer and cross-action, and denying the allegations of plaintiff's petition. He testified as to the purchase of certain real estate in Florida during the "boom," and the investment by him, with his wife's permission, before their marriage, of certain of her moneys in such realty; that when he purchased the house and lot in Atlanta, this Florida property was traded in on the purchase-price, and he assumed two outstanding mortgages, one of which he has paid off out of his earnings. He testified: "I think the equity in the house should be divided between us." His wife was in possession of the automobile he purchased. He testified that his life was constantly in danger, because of threats by the plaintiff, that she did not attend to any housework and slept in a bed apart from him, and that she had failed to prove a wife to him in every respect. The jury returned a verdict granting a total divorce between the parties, with liberty to each to marry again, and ordering the defendant to turn over to the plaintiff ten shares of the telephone stock, to contribute $50 each month to the support and maintenance of their boy during his minority, and to contribute to the plaintiff as permanent alimony $25 monthly for one year. The plaintiff's motion for new trial was overruled, and she excepted.

1. The evidence authorized the second concurring verdict. The general grounds of the motion for new trial present no error. See Code, §§ 30-101, 30-104, 30-106, 30-115, 30-122.

2. The contention of the plaintiff that the amount of the verdict was inadequate, because the undisputed evidence disclosed that the defendant was earning $275 a month, that before the separation he furnished to the plaintiff a house and gave her a monthly allowance of $100 in addition to paying the monthly light and gas bills, that she had left no separate estate and no earning capacity, and that $25 a month for one year as permanent alimony was inadequate and insufficient to support her in the manner in which she had been living for many years, and was inconsistent with the defendant's ability. Where the wife's conduct is such

that it caused the husband to obtain a total divorce from her, it does not follow that she will be in such a case entitled to permanent alimony as a matter of course, even though the jury grant a total divorce with neither party under disability. Code, § 30-210; *Rorie* v. *Rorie*, 134 *Ga.* 69 (67 S. E. 410) ; *Ward* v. *Ward*, 144 *Ga.* 312 (87 S. E. 17) ; *Davis* v. *Davis*, 134 *Ga.* 804 (68 S. E. 594, 30 L. R. A. (N. S.) 73, 20 Ann. Cas. 20).

3. The court charged the jury that "if the separation in this case was caused by the misconduct of the husband, as alleged in the plaintiff's petition, then you would be authorized to grant the plaintiff such amount as alimony as would be justified by the evidence, consistent with the ability of the husband and their condition in life." The plaintiff assigns error on this charge, contending that it in effect instructed the jury that the grant of alimony in a case where the separation was caused by the misconduct of the husband was discretionary, whereas under the law the wife in such a case is entitled to alimony and support as a matter of right; that the court should have instructed the jury that in such a case it was their duty to fix such an amount as alimony as would be consistent with the ability of the husband to pay and the condition in life, instead of instructing them that they would be authorized so to do; that said charge was misleading, in that the jury evidently believed that they had the right to render a verdict in the plaintiff's favor and to refuse any alimony, as the grant of $25 per month for twelve months was virtually a finding that she was entitled to a divorce because of the misconduct of the husband, and at the same time a refusal to give the plaintiff any support or alimony. While this charge may have been incorrect under the principle ruled in *Campbell* v. *Campbell*, 90 *Ga.* 687 (16 S. E. 960), and *Wilkes* v. *Wilkes*, 157 *Ga.* 841 (122 S. E. 548), it appears that the jury did render a verdict awarding permanent alimony to the wife, and did so under correct instructions by the court as to the basis for determining the amount. It follows that the charge, if erroneous, was harmless to the plaintiff. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except Russell, Chief Justice and Bell, Justice, who dissent from the ruling in the third division of this opinion.*